**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Fadeel Shuhaiber, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 18 C 3290 |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| David Shulda, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Fadeel Shuhaiber, formerly an Illinois state prisoner, brought this *pro se* civil rights action, 42 U.S.C. § 1983, alleging constitutional rights violations in early 2018 stemming from his treatment at the Stateville Northern Reception Center. ("Stateville NRC").  Defendants, all officers and medical staff at Stateville, move for summary judgment, *see* [202].  For the reasons stated below, the Court grants Defendants' motion [202] and enters judgment in moving Defendants' favor on Plaintiff's claim.[1]  Also for the reasons explained below, the Court dismisses this case as to the unserved defendant, Officer Houette.

**I.     BACKGROUND**

Plaintiff, a diabetic, contends that while confined at Stateville NRC, he experienced episodes of hypoglycemia (low blood sugar) on numerous occasions in 2018: January 4, January 18, February 22, February 26, March 2, March 4, March 5,

---

[1] This Court has jurisdiction under 28 U.S.C. § 1331, and venue is appropriate under 28 U.S.C. § 1391, because a substantial part of the events giving rise to this claim occurred at Stateville NRC, which is located in Will County, within the Northern District of Illinois.  *See* [204] at ¶ 1; [16].

March 8, March 9, March 18, April 9, April 10, April 11, April 23, April 24, April 28, May 10, and May 14.  Plaintiff contends that during these episodes, Correctional Officers Christoper Alamo, David Shulda, and Houette, and nurses Kristina Kashirksy,[2] Sara Mays, Naveen "Bobby" Nagpal, Christy Ogbozor, and Emmanuel Egbe were deliberately indifferent to his serious medical needs arising as a result of these episodes.  All Defendants except Houette have moved for summary judgment, [202].  Among other things, Defendants argue that summary judgment remains warranted because: (1) Plaintiff cannot prove that the incidents rose to the level of deliberate indifference to a serious medical condition; and (2) Plaintiff cannot prove his alleged medical injuries.

### A.    Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court.  The rule is intended "to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information, in determining whether a trial is necessary."  *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (cleaned up).  Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d).  LR 56.1(a)(2).  Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number,

---

[2] This Defendant's name is variously spelled "Kashirksy" and "Kashirsky" in the summary judgment materials.  It is not clear which is correct.

that supports it.  The Court may disregard any asserted fact that is not supported with such a citation."   LR 56.1(d)(2).

In turn, the opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact.  Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material."   LR 56.1(e)(3). "Mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003).  Specifically, a district court is not required to "'wade through improper denials and legal argument in search of a genuinely disputed fact.'" *Id.* (quoting *Bordelon v. Chicago Sch. Reform Bd. of Trustees,* 233 F.3d 524, 529 (7th Cir. 2000)).

Because Plaintiff is proceeding *pro se,*[3] Defendants served him with a Local Rule 56.2 Notice to Unrepresented Litigants Opposing Summary Judgment, [205]. Judge Maldonado, who previously presided over this case, set a June 24, 2024

---

[3] Plaintiff was represented by counsel throughout much of this case. Judge Chang first recruited counsel for Plaintiff on May 6, 2021. *See* [95], [97].  Original counsel moved to withdraw at Plaintiff's request after Defendants moved for summary judgment, [141].  Judge Maldonado granted the motion and recruited substitute counsel, [145]–[146], [148], but substitute counsel also moved to withdraw at Plaintiff's request after a disagreement over litigation strategy, [172].  Judge Maldonado granted the motion and appropriately declined to substitute counsel, given that Plaintiff had requested his attorney's withdrawal and did not show good cause to recruit a third attorney, [177]. *See Cartwright v. Silver Cross Hosp.*, 962 F.3d 933, 937 (7th Cir. 2020) ("the assistance of a pro bono lawyer in civil litigation is a privilege"; the "valuable help of volunteer lawyers is a limited resource," which "need not and should not be squandered on parties who are unwilling to uphold their obligations as litigants.").

deadline for Plaintiff to respond to the motion, [206]. When Plaintiff did not respond to the motion, this Court directed Plaintiff to show cause why this case should not be dismissed for want of prosecution, given that Plaintiff had not communicated with the Court since January 2024, and had not responded to Defendants' prior summary judgment motion, [208]. Plaintiff responded to that order by seeking an extension of time to respond to the summary judgment motion, [211]. The Court granted that motion, extending the deadline to September 30, 2024, but also directed Plaintiff to show cause as to why this lawsuit should not be dismissed for failure to prosecute along with his response, [212]. Plaintiff's responsive materials, received on October 1, 2024, did not address the show cause order. Beyond this failure (which itself warrants dismissal),[4] this Court will also consider Plaintiff's response as part of an alternate basis for its ruling on the merits.

In this case, Plaintiff's response to Defendants' Statement of Facts remains deficient, as he does not support his responses with citations to the record, as required. LR 56.1(b)(2), (d)(2). Likewise, Plaintiff attempts to assert additional facts in some instances, again without citation to the record. This constitutes another

---

[4] This fact constitutes a failure both to prosecute the case and to abide by court orders, and thus, it provides an alternate basis for this Court's resolution of this matter. *E.g., Birkley v. Taylor*, No. 24-2175, 2025 WL 3265805, at *1 (7th Cir. Nov. 24, 2025) ("dismissal is an appropriate sanction where, as here, a party 'has willfully refused to comply with discovery orders' and 'has been warned that noncompliance may lead to dismissal.'" (quoting *Pendell v. City of Peoria*, 799 F.3d 916, 917 (7th Cir. 2015)); *Salata v. Weyerhaeuser Co.,* 757 F.3d 695, 699 (7th Cir. 2014) ("A court may dismiss an action with prejudice if the plaintiff fails to prosecute or to comply with the Federal Rules of Civil Procedure or any court order."); *Roland v. Salem Cont. Carriers, Inc.,* 811 F.2d 1175, 1177–78 (7th Cir. 1987) ("Although dismissal is a harsh sanction that should be imposed infrequently, we recognize that the power to sanction through dismissal is essential to the district courts' ability to manage efficiently their heavy caseloads and thus protect the interests of all litigants.").

4

failure to comply with the Local Rules, which require that if an opposing party wants to assert additional facts in opposition to the motion, he must first supply a statement of additional facts that attaches any cited evidentiary material not included with the motion. LR 56.1(b)(3), (d)(2).

Where Plaintiff has not properly responded to a certain fact or has admitted it, the Court will accept it as true to the extent supported by the record. *Lamz*, 321 F.3d at 683. Nonetheless, even though the Court can demand strict compliance with Local Rule 56.1, *see Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x. 642, 643 (7th Cir. 2011) (unpublished), it will still generously construe the facts identified by Plaintiff to the extent they are supported by the record or where he could properly testify to them. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (courts may construe *pro se* submissions leniently). The Court, however, will not look beyond the cited material. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003) (courts are "not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them.").[5]

## B. Relevant Facts

At all relevant times, Plaintiff Fadeel Shuhaiber, who smokes and has Type 1 diabetes, remained in the custody of the Illinois Department of Corrections at Stateville NRC. [204] at ¶¶ 1, 2. Plaintiff was diagnosed with diabetes at age four

---

[5] Plaintiff's failure to comply with Local Rule 56.1 is not a basis for automatically granting Defendants' motions. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). Rather, the Court is mindful that the moving party has the "ultimate burden of persuasion" to show entitlement to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The Court will apply the requisite standards in evaluating the evidence.

and had experienced hypoglycemia in the past, including when he was a teenager. *Id.* at ¶ 3; [204-2] at 82:1–4. At the time of his deposition on April 15, 2022, he smoked roughly a pack of cigarettes a day. *Id.* at ¶ 4; [204-2] at 107:3–17. Plaintiff contends that smoking was not allowed in any correctional facility in Illinois; he also contends that he quit smoking in 2015 and remained in "quit mode," though he does not explain what this means. *See* [213] at ¶ 4.

At all relevant times, Defendants David Shulda and Christopher Alamo were correctional officers at Stateville NRC. [204] at ¶¶ 5, 8. Neither has medical training and neither provides medical care, *id.* at ¶¶ 6, 9, though Plaintiff contends, without support, that both had "basic medical training" as part of their training to become a correctional officer. [213] at ¶¶ 6, 9–10. Both Defendants Shulda and Alamo indicated in discovery that, if a serious medical condition occurred, they would call a "Code 3" over the radio and separately notify their lieutenant and sergeant; neither handled medical matters himself. *See* [204-4] at ¶ 5.[6]

Plaintiff concedes that he cannot recall with any specificity the instances in which he provided notice to Officers Shulda or Alamo regarding hypoglycemic incidents. [204] at ¶ 11. But he nonetheless contends that grievances about this issue were "never turned over"; he also contends that he complained about misconduct and that his complaint and the results of an official investigation

---

[6] Defendants claim that Officer Shulda was not even permitted to administer medication, *see* [204] ¶ 7, but the cited interrogatory response remains inconsistent on this point. At the same time, Plaintiff claims Shulda was obligated to "provide emergency medical treatment" as needed, *see* [213] at ¶ 7, but he similarly cites nothing to support his assertion.

following those complaints were also "never turned over."[7] [213] at ¶ 11. The record provides no basis to suggest that the correctional officer defendants would be able to identify an instance of hypoglycemia. [204] at ¶ 12; [204-2] at 115:7–116:16 (when his attorney asked Plaintiff how Defendants would know that he needed assistance, Plaintiff responded "It's simple, man," without elaboration). Plaintiff's conclusory response is to again assert, without citation to evidence, that officers are supposed to be able to identify if an inmate has a serious medical need. [213] at ¶ 12.

At all relevant times, Defendants Emmanuel Egbe and Kristina Kashirksy were nurses at Stateville NRC. [204] at ¶¶ 13–14. Plaintiff was unable to recall the medical responsibilities of Nurse Kashirksy or the medical conditions she was responsible for treating. *Id.* at ¶ 15. Yet he claims, again without support, that "she was supposed to give me my administered insulin shot per my prescription and she never did." [213] at ¶ 15.

At all relevant times, Defendants Naveen "Bobby" Nagpal, Christy Ogbozor, and Sarah Mays were nurses at Stateville NRC. [204] at ¶¶ 16–18. Plaintiff does not recall with specificity the instances in which Defendant Mays allegedly failed to respond to Plaintiff's hypoglycemic incidents. *Id.* at ¶ 19. Instead, Plaintiff responds that Defendants are "asking questions about incidents that happened more than 6 years ago" and again points to purported grievances that he contends Defendants

---

[7] Plaintiff claimed Defendants failed to provide six "missing" grievances in discovery, and the parties litigated the issue before Judge Maldonado. Ultimately, defense counsel determined that Defendants were not in possession of those grievances because Plaintiff presented them to his counsel only, and they thus never made it into Plaintiff's master file. Judge Maldonado found no reason to doubt the veracity of this representation in her factual findings. *See* [196], [197], [198].

failed to turn over. [213] at ¶ 19.

Quite simply, Plaintiff sued the Defendant nurses because they work in the Stateville NRC medical department, but he does not know and cannot show what incidents (if any) involve a named Defendant. [204] at ¶ 20. Plaintiff claims he dealt with each Defendant "for a whole year on different shifts," and contends that it would be "almost impossible for any human being to remember each incident and each problem that happens in a whole year." [213] at ¶ 20. Plaintiff also acknowledged at his deposition that, in some instances, he was unable to give Defendants notice that he was having a hypoglycemic incident. [204] at ¶ 21; [204-2] at 49:18–23. Plaintiff claims Defendants "failed to document each incident and each call that was made by officers to medical." [213] at ¶ 21.

On the record, Plaintiff also conceded that the prison permitted him to keep snacks inside his cell at Stateville NRC in order to treat his own blood sugar levels. [204] at ¶ 22; [204-2] at 65:5–19 (Plaintiff acknowledged that he had snacks and juice in his cell and was sometimes able to address his blood sugar levels on his own). Despite this, Plaintiff contends that prisoners at Stateville NRC were not allowed to keep food in their cells or to purchase food from the commissary. [213] at ¶ 22. Even if Plaintiff had submitted an affidavit in support of this assertion (which he has not), Plaintiff cannot contradict his sworn deposition testimony at the summary judgment stage, unless he offers a plausible explanation for the discrepancy, which he has not done. *Donaldson v. Johnson & Johnson*, 37 F.4th 400, 406 (7th Cir. 2022) (citing *Beckel v. Wal-Mart Associates, Inc.*, 301 F.3d 621, 623 (7th Cir. 2002)). As such,

Plaintiff has acknowledged that he had snacks inside his cell that he could use, at least on certain occasions, to address his blood sugar.

Additionally, the record shows that Plaintiff was treated for hypoglycemia on January 18, 2018 and March 15, 2018. [204] at ¶ 23.[8] On both occasions, Defendant nurses took Plaintiff's blood sugar readings, gave him supplemental sugars to raise his blood sugar, and referred him to a doctor or for additional medical supervision. *Id.* at ¶ 24. Plaintiff responds that Defendants did "what they have to do by law and by their obligations, but what they did not do is provide proper care to a diabetic to avoid such incidents which only [proves] that these doctors and nurses can't be held in charge of people with serious medical needs." [213] at ¶ 24. Plaintiff says he suffered "several diabetic comas while in custody of IDOC," [213] at ¶ 25, yet the medical records provide no evidence to support this claim and the record contains no documentation suggesting that Plaintiff was in a diabetic coma at any point while he was held at Stateville NRC, [204] at ¶ 25. Plaintiff provides no evidence to support the point and has not provided any details concerning any such comas.[9]

---

[8] Plaintiff admits this fact, but he contends that there are "loads of other incidents" that were not documented in the medical records, but which he can prove with grievances. *See* [213] at ¶ 23. Yet Plaintiff points to no evidence in support of this proposition and has not submitted any of these grievances, or any other supporting evidence.

[9] Plaintiff says he may also have heart, kidney, and thyroid conditions. Defendants assert that any such conditions existed before he was placed in the custody of Stateville NRC. [204] at ¶ 26. Plaintiff concedes that his thyroid condition was diagnosed while he was in the custody of Lawrence Correctional Center, after his stint at Stateville NRC. [213] at ¶ 26. But he contends that he did not receive follow-up care for his heart and kidney conditions while at Stateville NRC, *see id.* He does not, however, support the assertion. Instead, Plaintiff admits that he was prescribed medications for his heart and kidney issues before he entered the custody of Stateville NRC, [204] at ¶ 27, but claims, again without support, that Stateville doctors discontinued those medications. [213] at ¶ 27. Plaintiff claims that he will be taking pills "for the rest of [his] life" for his thyroid condition, [213] ¶ 28, while admitting that he does not currently suffer from any thyroid conditions, [204] at ¶ 28; [204-2] at

Plaintiff testified that, at the time of his deposition, he was not receiving any medical treatment for physical injuries as a result of the alleged mistreatment at Stateville NRC that is the subject of this case. [204] at ¶¶ 29–30; [204-2] at 96:11–15. He conceded at the time of his deposition that, in the more than 18 months since he was deported from the United States, he had not been treated by a doctor for pain or physical injuries attributed to his treatment at Stateville NRC. [204] at ¶ 31; [204-2] at 93:6–94:7.

As for mental health treatment, Plaintiff testified that he received treatment for emotional pain arising from his experiences at Stateville NRC; but he also said that treatment occurred in 2017, before the events giving rise to this case even occurred. And he conceded that he could not identify any medication prescribed for mental or emotional pain stemming from the events of this case. [204] at ¶ 29; [204-2] at 97:2–98:15. Plaintiff contends in his factual response that he was "on PTSD treatment and other psychological treatment medications" as a result of his hypoglycemic episodes and that "the medical records are full of loads of mental health treatment plans that I still take to this current day." [213] at ¶ 30. Plaintiff also contends that he visited doctors in Lebanon and the United Arab Emirates to continue his medical treatment. *See id.* at ¶ 31. But he provided no evidence or medical records to support his claims.

Ostensibly, Plaintiff also contends that injuries from his alleged mistreatment at Stateville NRC have interfered with his ability to maintain employment, [213] at

---

109:15–20. The Court disregards Plaintiff's unsworn assertion concerning thyroid pills. Simply, Plaintiff's heart, kidney, and thyroid conditions are not the subject of this lawsuit.

¶ 32, but again he points to no evidence in the record supporting this proposition. And he admitted that he did have a job in the United Arab Emirates, where he currently resides.[10]  [204] at ¶ 32; [204-2] at 99:7–100:13.

Based upon this factual record, Defendants move for summary judgment on Plaintiff's claim of deliberate indifference relating to his hypoglycemia, [202]. Plaintiff responded, and this Court now resolves the motion.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To determine when a genuine dispute of material fact exists, this Court must assess the evidence in the record as presented in depositions, documents, affidavits or declarations, and other materials. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992).

The parties seeking summary judgment bear the initial burden of showing the grounds for their motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once they have done so, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute."  *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).  If a non-moving party bears the burden of proof on an issue, he may not rest on the pleadings, but instead must show that there is a genuine issue of material fact.  *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497, 500 (7th Cir. 1998).  A "genuine

---

[10] On August 21, 2019, an immigration judge ordered Plaintiff to be deported. [204] at ¶¶ 33–34.  Yet Plaintiff states that, if a trial were to be scheduled in this matter, he would attempt to reenter the United States and attend in person.  [213] at ¶ 33.

11

issue of material fact exists when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Brown v. Osmundson*, 38 F.4th 545, 549 (7th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The Court must construe all facts in the light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). A court's "role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Id.* A bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, however, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those supported by only speculation or conjecture," *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (cleaned up).

## III.    ANALYSIS

The Eighth Amendment's prohibition on "cruel and unusual punishment protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including grossly inadequate medical care." *Lockett v. Bonson*, 937 F.3d 1016, 1022 (7th Cir. 2019) (cleaned up). To prevail on a claim that his medical care violated the Eighth Amendment, the plaintiff must establish that: (1) he suffered from an objectively serious medical condition; and (2) the defendants were

deliberately indifferent to that condition. *See id.* at 1022 (citing *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)).

### A. Objectively Serious Medical Condition

Defendants first argue that Plaintiff's hypoglycemic episodes did not rise to the level of a serious medical condition. A serious medical condition for the purposes of an Eighth Amendment claim is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008).

*Bryant v. Roth*, No. 93 C 05552, 1996 WL 296599, at *1 (N.D. Ill. May 31, 1996), which Defendants cite, remains instructive here. In that case, the plaintiff prisoner alleged that he did not receive his prescribed diet and, as a result, suffered reactive hypoglycemia, a condition the court described as "a non-life-threatening condition in which an individual's body produces an excessive amount of insulin in response to sugar intake." *Id.* The plaintiff's medical records showed that, during the episode, he suffered "a mild headache and dizziness, with no long-term effects." *Id.* On this record, the court granted summary judgment, finding that the plaintiff had "offered nothing to support his contention that his reactive hypoglycemia is a serious, life-threatening illness." *Id.*, 1996 WL 296599, at *3. In particular, the court emphasized the plaintiff's failure to offer medical evidence from his treating physicians to indicate that the hypoglycemia he suffered was a serious illness. *Id.* at *2–3.

Here, Plaintiff represents that he suffered "several diabetes coma episodes" while in the custody of Stateville NRC, and that "90 [percent]" of them were

13

"undocumented by these medical professionals." *See* [214] at 2. Plaintiff contends that these hypoglycemic episodes were caused by the prison's failure to provide him with a gluten-free diet, and resulted in "severe complications" to his blood pressure and heart, as well as a thyroid condition caused by uncontrolled diabetes. *Id.* Yet he provides no evidence to substantiate any of these claims.

Plaintiff contends that he had evidence documenting "each and every date of every hypoglycemic episode that Defendants failed to treat" but that these records were stored in a "safe location" in Chicago at the time of his deportation. *Id.* at 3–4. Plaintiff states, however, that he chose not to turn these documents over to his two sets of recruited counsel, because he did not trust them and now can no longer access the documents. *Id.* at 4. Plaintiff represents that he would only turn these records over to an officer of the court who is "sworn to secrecy," and adds that he would never turn the records over to someone he does not trust, even if it causes the case to be dismissed. *Id.*

Plaintiff misapprehends how this process works. Summary judgment is "the 'put up or shut up' moment in a lawsuit, when a party must show" what evidence it has that "would convince a trier of fact to accept its version of events." *See Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003) (cleaned up). When a plaintiff fails to produce evidence, the defendant need not produce evidence of its own but is instead entitled to summary judgment. *See Marion v. Radtke,* 641 F.3d 874, 876–77 (7th Cir. 2011) ("The burden of production and the risk of non-persuasion rest with the plaintiff in civil litigation.").

14

Groundless mistrust of his lawyers does not excuse Plaintiff's failure to proffer evidence in support of his claims. The Court recruited two sets of capable, highly regarded counsel to represent Plaintiff, and both sets withdrew at Plaintiff's request. A review of his deposition testimony shows that Plaintiff remained recalcitrant and non-responsive to even his own attorney's questions. When counsel tried to ask Plaintiff if his injuries as a result of the events in this case affected his ability to hold a job, Plaintiff repeatedly asked counsel to rephrase or repeat his questions instead of answering directly. *See* [204-2] at 98:21–100:13. Plaintiff similarly failed to directly answer counsel's questions about his diet while in custody. *See id.* at 102:1–103:18. And Plaintiff repeatedly responded "I don't know" to counsel's questions about whether any doctor who had treated Plaintiff would be able to testify that the alleged mistreatment at Stateville NRC had aggravated any of Plaintiff's medical conditions or caused him psychological issues. *Id.* at 105:3–107:4.

As in *Bryant*, Plaintiff provides no evidence to support his contention that he suffered any serious effects from his reactive hypoglycemia; nor does he offer any evidence to support his claim that his alleged mistreatment at Stateville NRC caused heart complications or thyroid problems. *See* [214] at 2.

To be sure, hypoglycemic episodes can constitute a serious medical condition, and the question of whether they do, depends upon the severity of the incidents and their cause. *Compare Harris v. Prison Health Servs.*, No. 1:10–cv–1301, 2011 WL 672209, at *6 (W.D. Mich. Feb. 18, 2011) (finding that prisoner who claimed deliberate indifference to his hypoglycemia did not have an obvious, serious medical

15

need where his alleged symptoms were mere discomfort and weakness or lightheadedness that caused no injury); *with Gonzalez v. Jones*, No. 07 CIV. 2126, 2010 WL 533856, at \*15 (S.D.N.Y. Feb. 11, 2010), *aff'd sub nom. Gonzales v. Nowak*, 443 F. App'x. 615 (2d Cir. 2011) ("There is no dispute that severe hypoglycemia, resulting in a diabetic seizure, constitutes a serious medical condition."). Plaintiff here, in contrast to the plaintiff in *Bryant* (who plainly did not suffer from an insulin reaction of the type often suffered by diabetics, 1996 WL 296599, at \*3), is an insulin-dependent diabetic, but the evidence in the record nonetheless fails to show that Plaintiff episodes remained serious.[11]

## B.     Deliberate Indifference

To establish deliberate indifference, a plaintiff must point to evidence that a prison official knew of a substantial risk of harm to an inmate and acted or failed to act in disregard of that risk. *Arnett*, 658 F.3d at 751. Deliberate indifference is "more than negligence and approaches intentional wrongdoing." *Id.* (cleaned up). In the case of medical professionals, a jury can infer deliberate indifference on the basis of a treatment decision only if the response was so inadequate as to demonstrate the absence of professional judgment. *Id.* Deliberate indifference is not demonstrated by

---

[11] Indeed, the record only includes evidence of two of the many claimed incidents of Plaintiff suffering hypoglycemia which required any medical treatment at all. During the first incident, on January 18, 2018, Plaintiff was at one point "non-verbal" with his eyes closed, but he became responsive after he received supplemental sugars. *See* [204-3] at 5. In the second incident, which occurred March 15, 2018, staff described Plaintiff as alert but experiencing confusion. *See id.* at 13. He was given crackers and peanut butter, and his blood sugar was checked again later that day. *Id.* at 14. To the extent Plaintiff's status as a diabetic and his need for medical attention during these episodes might suggest that Plaintiff's condition rises to the level of a serious medical need, s*ee, e.g., Milton v. Turner*, 445 F. App'x. 159, 162 (11th Cir. 2011) (per curiam) (assuming that low blood sugar in a diabetic is a serious medical need), his claim nonetheless fails, for the reasons discussed below.

a prisoner's dissatisfaction with his medical care. *See Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032–33 (7th Cir. 2019) (prisoners are not "entitled to receive unqualified access to healthcare" and medical malpractice does not violate the Constitution).

The record here shows that, during the January 18, 2018, incident, Nurse Kashirksy came to the cellhouse at 4:30 a.m. and saw Plaintiff sitting in bed, staring. *See* [204-3] at 5. She gave him two juices, checked his blood sugar, and found it to be 49 mg/dL.[12] *Id.* Plaintiff became non-verbal at one point and closed his eyes. *Id.* Nurse Kashirksy gave Plaintiff a glucose tab and rechecked his blood sugar, which then registered 97 mg/dL. *Id.* Plaintiff opened his eyes, responded, and drank two more juices. *Id.* Nurse Kashirksy returned at 5:30 a.m. and found Plaintiff eating crackers. *Id.* Plaintiff admitted to her that he had not been eating well. *Id.* at 6. Nurse Kashirksy rechecked Plaintiff's blood sugar at that point and found it to be 277 mg/dL. *Id.* Plaintiff was added to the sick call list. *Id.* at 5.

The second incident occurred on March 15, 2018; the record shows that, at about 10:20 a.m. that day, Nurse Tomarous (who is not a Defendant) determined that Plaintiff had insulin-induced hypoglycemia. *Id.* at 13. Plaintiff was alert, but non-verbal, confused, and slightly disoriented. *Id.* A blood sugar test showed a result of 42 mg/dL. The nurse gave Plaintiff crackers, peanut butter, and two sticks of oral

---

[12] Normal blood sugar should be between 80 mg/dL and 130 mg/dL before eating, and less than 180 mg/dL two hours after the start of a meal. *See* Centers for Disease Control, Diabetes, Manage Blood Sugar, https://www.cdc.gov/diabetes/treatment/index.html (last visited Feb. 6, 2025).

glucose. *Id.* at 13. At 11:46 a.m., Defendant Mays took Plaintiff's blood sugar, and it registered 151 mg/dL. *Id.* at 14. Plaintiff saw a doctor at 6 p.m., who noted that Plaintiff had a hypoglycemic reaction in the morning. *Id.* There is no indication of any other involvement by Defendant Mays.

Based upon the evidence in the record, neither Nurse Mays nor Nurse Kashirksy ever disregarded Plaintiff's medical condition. Indeed, Plaintiff concedes as much in his response to Defendants' factual statement when he states that these nurses "have done what they have to do by law and their obligations." *See* [213] at ¶ 24. Instead, Plaintiff's response to the motion largely consists of unsubstantiated allegations that doctors at Stateville (who are not named as Defendants in this matter) failed to diagnose a thyroid condition caused by "uncontrolled diabetes" and that these hypoglycemic episodes caused elevated blood pressure and damage to his heart. *See* [214] at 2. But as noted above, Plaintiff offers no evidence to support his claims of numerous hypoglycemic episodes or resulting damage to his health. The record instead reflects only two hypoglycemic incidents, which medical staff appropriately treated.[13].

---

[13] Plaintiff's deposition testimony was vague as to how or when the remaining Defendant nurses ever violated his rights. He testified, generally, that the nurses that responded to emergency calls in his cell did not check his blood sugar or give him any "sweetener." *See* [204-2] at 35:5–11.) But this claim remains belied by the evidence discussed above and remains uncontroverted by any evidence from Plaintiff. Plaintiff has proffered no evidence linking any Defendant to any alleged violation of his rights, and his attempt fails to create any disputed issue of fact as to the above-described records with mere conclusory assertions concerning the existence of other evidence. *See, e.g., Davis v. Ghosh*, No. 13-cv-4670, 2015 WL 3396805, at *3 (N.D. Ill. May 26, 2015) (the validity of medical records cannot be disputed absent contrary evidence). Plaintiff proffers no evidence linking any Defendant to any alleged violation of his rights. And the evidence that does exist in the record establishes that medical staff reasonably and appropriately responded to his hypoglycemic events.

The record provides no basis to find that any of the officer Defendants were deliberately indifferent to any serious medical need experienced by Plaintiff. When asked about the issue at his deposition, Plaintiff remained unable to say when, how, or if he told Officer Shulda or Officer Alamo that he was experiencing a hypoglycemic event; nor could he testify about any instances when they failed to respond. Plaintiff testified that he could not provide specific testimony about notice to Officer Shulda because "it happened way, way many times while I was in segregation." [204-2] at 47:16–21. But Plaintiff could not point to any specific incident in which Officer Shulda failed to respond to his request for medical care or where any such failure caused him harm. Instead, Plaintiff claims Officer Shulda sometimes failed to ensure that Plaintiff ate his lunch or to investigate why Plaintiff had not eaten his lunch, if in fact he had not eaten it. *See id.* at 51:10–53:24. Such allegations do not support a claim for deliberate indifference to a serious medical need.

With regard to Officer Alamo, Plaintiff testified that he urinated on himself during a hypoglycemic episode and the officer made him wait two to three hours (from 2 p.m. to 4 or 5 p.m.) to get medical attention.[14] *See* [204-2] at 59:16–60:14. Plaintiff testified that, when he went to the Medical Unit, he received juice to get his blood sugar up a bit. *Id.* at 61:15–19. But Plaintiff offers no evidence to suggest that he was suffering from a serious medical need on this date; nor does he provide any evidence to suggest that a delay of 2 or 3 hours under the circumstances caused him harm. *See Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007) (in cases in which

---

[14] Based upon the timing of this incident, as related by Plaintiff, this appears to be an unrelated episode than those described in the medical records.

19

prison officials have delayed rather than denied medical assistance to an inmate, the plaintiff must offer "verifying medical evidence" that the delay caused some degree of harm). Plaintiff's own testimony that he experienced untreated symptoms during the delay does not suffice. *Lisle v. Eovaldi*, No. 16-cv-00422, 2020 WL 1287947, at \*7 (S.D. Ill. Mar. 18, 2020) (citing *Johnson v. Obaisi*, No. 16-cv-4046, 2020 WL 433872, at \*7 (N.D. Ill. Jan. 28, 2020)).

Plaintiff also describes an incident in which he allegedly urinated in the shower because of hypoglycemia and then Officer Alamo declined to allow him to go back to his cell. *See* [204-2] at 63:19–65:9. But Plaintiff concedes that he received no medical treatment for that incident and was able to resolve the issue by eating a snack in his cell. *Id.* at 64:19–65:9. The facts do not indicate a serious medical need that Officer Alamo disregarded. Given the absence of any evidence suggesting that Defendants were deliberately indifferent to a serious medical need, Defendants remain entitled to summary judgment.[15]

---

[15] Defendants also argue that Plaintiff's claim fails because he has not come forward with evidence of a physical injury suffered as a result of Defendants' conduct and 42 U.S.C. § 1997e(e) prohibits a prisoner from recovering damages for mental and emotional injuries absent a showing of physical injury. The Seventh Circuit has actually held otherwise, *see Calhoun v. DeTella*, 319 F.3d 916, 940–41 (7th Cir. 2003) (recognizing that the deprivation of a constitutional right itself is a cognizable injury that may allow for recovery of nominal or punitive damages). But given Plaintiff's failure to demonstrate the deprivation of a constitutional right, the point remains immaterial. Finally, Defendants argue that this case should be dismissed because Plaintiff: (1) having been deported, remains absent from the jurisdiction; and (2) having gotten rid of his attorneys, has no one to prosecute his claims. Defendants did not develop the argument, and the Court declines to address it. *See White Eagle Co-op. Ass'n v. Conner*, 553 F.3d 467, 476 n.6 (7th Cir. 2009) ("It is not the province of the courts to complete litigants' thoughts for them, and we will not address this undeveloped argument."); *Freeman United Coal Mining Co. v. Office of Workers' Comp. Programs, Benefits Review Bd.*, 957 F.2d 302, 305 (7th Cir. 1992) (court has no obligation to consider an argument that "is merely raised, but not developed, in a party's brief"). In any event, the point remains moot in light of the Court's findings above.

## C.     Officer Houette

In his first amended complaint [16], filed April 2, 2019, Plaintiff named, along with the Defendants discussed above, "Officer Hovette." On screening, Judge Chang, who previously presided over this case, ordered summons to issue as to "Officer Hovette," but summons was returned unexecuted. *See* [15], [18]. After Plaintiff reported that Defendant's last name was "Houette," the Court issued an alias summons, but that too was returned unexecuted on July 19, 2019, with a notation indicating that Stateville could not accept a waiver of service for this individual because it had no record of an employee with that name, or any name "even close." *See* [36], [39].

Thereafter, on September 5, 2019, Judge Change ordered Plaintiff to issue interrogatories to defense counsel in an effort to identify this Defendant, *see* [41], but the record fails to show that he ever did so, and the docket reflects no further efforts to serve this individual, who, to date, still remains unserved—long after the 90-day period specified by Rule 4(m) and long after the statute of limitations on the claims at issue in this case (all relating to the alleged denial of care at Stateville NRC during the period from January 2018 through May 2018) expired. *See, e.g., Hudson v. Nwaobasi*, 821 F. App'x 644, 646 (7th Cir. 2020) (Illinois's two-year statute of limitations applies to § 1983 claims deliberate indifference); *Kalimara v. Illinois Dep't of Corrections*, 879 F.2d 276, 277 (7th Cir. 1989) (Illinois's two-year statute of limitations for personal injury applies to § 1983 actions brought in Illinois).

Although ordinarily the Court would grant Plaintiff an opportunity to establish good cause for his delay in identifying and serving Defendant Houette, the circumstances of this case compel a different path. Plaintiff has, to date, still not served Houette; nor has he ever requested an extension of Rule 4(m)'s deadline for service. Nor, it seems, did he ever comply with the Court's prior order(s) putting him on notice of the service issue and instructing him to serve interrogatories on defense counsel to ascertain the identity of this defendant. Likewise, the docket fails to show that he ever moved to compel responses to such discovery (if he ever issued it). Accordingly, even if Plaintiff requested such relief at this point (well after completion of the summary judgement process), the Court would summarily deny his request, based upon his failure to exercise due diligence.

This Court would also deny any request to extend the deadline for service based upon the other traditional considerations, including but limited to, the fact that the applicable statute of limitations has now expired (and that it did so years before Defendants even filed the current motion for summary judgement). *See Jones v. Ramos*, 12 F.4th 745, 749 (7th Cir. 2021) ("The factors that courts typically consider when deciding whether to grant an extension of time for service of process include but are not limited to: whether the defendant's ability to defend would be harmed by an extension; whether the defendant received actual notice; whether the statute of limitations would prevent refiling of the action; whether the defendant evaded service; whether the defendant admitted liability; whether dismissal will result in a windfall to a defendant; whether the plaintiff eventually effected service; whether the

22

plaintiff ever requested an extension from the court due to difficulties in perfecting service; and whether the plaintiff diligently pursued service during the allotted period."). Among other factors in the record, the expiration of the statute of limitations and Plaintiff's lack of due diligence, including his failure to ever effectuate service or even request an extension, would all preclude any re-opening of the service window for Defendant Houette.

Finally, the Court observes that, even if Plaintiff had properly identified and served Defendant Houette, any deliberate indifference claim against this Defendant would fail as a matter of law for the same reasons it fails as to the other Defendants. This is so because Plaintiff's claim against Houette remains predicated upon the same facts as the claim against Officers Shulda and Alamo, *see, e.g.*, [15] at 6 (screening Plaintiff's complaint to allege that "Shuhaiber alleges that Officers Shulda, Hovette, and Alamo, as well as various unnamed officers, delayed his access to care during these episodes" and allowing the complaint to proceed against Officers Shulda, Hovette, and Alamo on this basis); *see also* [204-2] at 15 (where Plaintiff testified, under oath, that he was alleging the "same stuff" as to Officer Hovette, the "same complaints against him as Officer Shulda."). As a result, dismissal of this Defendant produces no windfall for the defense.

In *Cardenas v. City of Chicago*, the plaintiff had failed to serve one of the named defendants a year after the time specified in Rule 4(m) had passed; the court held that, although it *could* grant a permissive extension of the deadline for service even in the absence of a good cause showing by the plaintiff, it declined to do so

23

because the applicable statute of limitations had run. No. 08 C 3174, 2010 WL 610621, at *3 (N.D. Ill. Feb. 15, 2010), *aff'd*, 646 F.3d 1001 (7th Cir. 2011). In affirming the dismissal of the unserved defendant with prejudice based upon the expiration of the statute of limitations during the pendency of the suit, the Seventh Circuit held, "If the statute of limitations has meanwhile expired it will be the limitations defense that greets any new action, which will make the case just as dead as a disposition on the merits"; in such a case, "dismissal with prejudice was appropriate where the plaintiff did not meet Rule 4(m) and where the statute of limitations expired during the federal case." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1008 (7th Cir. 2011). *See also Miller v. CCC Info. Sys., Inc.*, 202 F.3d 274 (7th Cir. 2000) ("so far as the record reveals, defendants have not been served to this day. Plaintiffs' counsel seems to think it sufficient if a copy of the complaint eventually reaches defendant's counsel. That is not what 'service of process' means. Service is in many respects a formal matter, but it is also foundational, and when the plaintiff neglects to serve the defendant the suit must be dismissed."); *Conover v. Lein*, 87 F.3d 905, 908–09 (7th Cir. 1996) (indicating that, even when the initial basis of the dismissal is Rule 4(m), the dismissal should be with prejudice when the statute of limitations has run).

For all of these reasons, the Court dismisses this matter with prejudice as to Defendant Officer Houette.

24

## IV. CONCLUSION

For the reasons explained above, the Court grants Defendants' motion for summary judgment [202] and enters judgment in favor of all properly served Defendants—that is, Correctional Officers Christopher Alamo and David Shulda, and Nurses Kristina Kashirksy, Sara Mays, Naveen "Bobby" Nagpal, Christy Ogbozor, and Emmanuel Egbe—on Plaintiff's complaint. The Court also dismisses this case with prejudice as to the unserved defendant, Officer Houette.

Dated: February 26, 2026                    ENTERED:

John Robert Blakey
United States District Judge

25